IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CV-130-FL

| | | |
|---|---|---|
| LESLEY MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARTERET COUNTY, NORTH CAROLINA, TOMMY BURNS, II, in his individual capacity, and EUGENE FOXWORTH, in his individual capacity | ) ) ) ) ) | ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (DE 12) and plaintiff's motion for leave to supplement her response thereto. (DE 29). For the following reasons, defendants' motion is granted in part and denied in part, and plaintiff's motion is terminated as moot.

## STATEMENT OF THE CASE

Plaintiff commenced this civil rights action by complaint filed October 24, 2022, and amended December 22, 2022, asserting claims under 42 U.S.C. § 1983 for denying plaintiff due process and violating her constitutionally guaranteed liberty interest, for libel, and under Article I Section I of the North Carolina Constitution for violation of the right to enjoy the fruits of her labor. Plaintiff seeks compensatory and punitive damages, costs, and fees.

Defendants filed the instant motion to dismiss December 22, 2022, plaintiff responded, and after obtaining an extension of time, defendant replied. On February 21, 2023, plaintiff moved for

leave to file sur-reply on the grounds that defendants in their reply memorandum introduced a matter concerning its liability insurance that was outside the pleadings and the instant motion to dismiss.

## STATEMENT OF FACTS

The relevant facts alleged in the complaint[1] may be summarized as follows. Plaintiff served as library director for Carteret County, North Carolina ("Carteret County") from February 17, 2020, until October 26, 2021, (see Compl. ¶ 12), during which time Carteret County's public libraries underwent a controversial withdrawal from a regional library system. (See id. ¶¶ 14-15, 20-21). The county manager and plaintiff's supervisor, defendant Tommy Burns, II ("Burns"), allegedly was of the opinion that plaintiff was inter alia "extremely knowledgeable . . . , well respected among her peers . . . , and a diligent leader[]." (Id. 25-26). Defendant Eugene Foxworth ("Foxworth") served as assistant county manager. (See id.).

The Board of Commissioners of Carteret County had on December 3, 2018, "ordained" a personnel policy, which took effect January 1, 2019, and remained in effect throughout plaintiff's employment. (Id. ¶ 23). Carteret County had in addition "private citizens who acted as library boosters in private organizations referred to as Friends of the Library groups." (Id. ¶ 35).

Following a disagreement between plaintiff and certain members of the Friends of the Library groups, including a member named Tina Seibl ("Seibl"), Seibl met with defendant Foxworth without plaintiff present. (See id. ¶ 46-49). At that meeting, Foxworth allegedly decided to terminate plaintiff's employment. (See id. ¶ 50). On October 25, 2021, defendant Foxworth held a pre-disciplinary conference with Amanda Atchinson ("Atchinson"), assistant human resources director, and plaintiff, "invok[ing] the provisions of the personnel policy having to do

---

[1] Hereinafter, all references to the "complaint" in the text or "Compl." in citations in this order are to the amended complaint (DE 11) unless otherwise specified.

with 'unsatisfactory job performance'" without citing any specific examples of poor performance. (Id. ¶ 63). Following the meeting, Atchinson "set the time of 8:30 the next morning 'to discuss the outcome [of the pre-disciplinary conference], which [would] be dismissal, unless plaintiff provide[d] a resignation letter at that time.'" (Id. ¶ 67). Plaintiff was terminated the next day. (Id. ¶ 69).

**COURT'S DISCUSSION**

A.  Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the petitioner bears the burden of showing that federal jurisdiction is appropriate when challenged by the respondent. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the factual basis for subject matter jurisdiction, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[2] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-

---

[2]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

1.  Plaintiff's Motion to File Supplemental Memorandum

The court addresses first plaintiff's motion to file sur-reply regarding defendant's asserted immunity to plaintiff's state law claims. Where, for the reasons that follow, the court declines to exercise supplemental jurisdiction over the claims to which plaintiff's proffered memorandum is addressed, the court finds plaintiff's motion moot. Accordingly, the motion is terminated.

2.  42 U.S.C. § 1983

Defendants Burns and Foxworth argue that plaintiff's due process claim fails as a matter of law because plaintiff fails to allege the deprivation of a property or liberty interest, or in the alternative, that qualified immunity shields them from liability where plaintiff has not pled adequately she was deprived of a clearly established right. The court agrees, on the basis that qualified immunity shields defendants from liability with respect to plaintiff's deprivation of property claim, and that plaintiff has failed to allege facts sufficient to draw an inference that defendants violated any liberty interest.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV §1. "To adequately allege a . . . procedural due process claim, [a plaintiff] must allege that she (1) lost something that fits into one of the three protected categories: life, liberty, or property, and (2) did not receive the minimum measure of procedural protection warranted under the circumstances." Strickland v. United States,

4

32 F.4th 311, 347 (4th Cir. 2022). "In assessing a procedural due process claim, unless there has been a deprivation of a protected liberty or property interest by state action, the question of what process is required is irrelevant, for the constitutional right to due process is simply not implicated." Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 146 (4th Cir. 2009); Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (same, for both "substantive or procedural" due process claims).

a. Deprivation of Property under § 1983

"The Fourteenth Amendment's procedural protection of property" safeguards a person's interest "in specific benefits," which under certain circumstances may include "continued employment." Board of Regents of State Colleges v. Roth, 508 U.S. 564, 573 (1972). As the Supreme Court has explained,

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

Id. at 577.

The United States Court of Appeals for the Fourth Circuit has recognized that "[t]he procedural safeguards encompassed by the due process clause extend to [a plaintiff's] continued employment only if she had a property interest in that employment." Pittman v. Wilson Cnty., 839 F.2d 225, 226 (4th Cir. 1988). "[A] property interest in employment can be created by statute, ordinance, or express or implied contract," and "the sufficiency of the claim of entitlement must be decided by reference to state law." Pittman, 839 F.2d at 227.

When an employee holding a property interest in continued employment faces termination, she is "entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." Cleveland Board of

5

Education v. Loudermill, 470 U.S. 532, 546 (1985). When "state-created procedures exceed the amount of process otherwise guaranteed by the Constitution," alleged "violations of due process . . . are to be measured against a federal standard of what process is due," not a state standard. Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1468 (4th Cir. 1990).

According to the complaint, the Carteret County "Board of Commissioners . . . ordained [the personnel policy] on December 3, 2018." (DE 11 at 4) (emphasis added). County ordinances carry "the force of law," Pittman, 839 F.2d at 229, and as such they may create property rights. However, it is not clear on the face of the personnel policy whether it was passed as an ordinance, and the complaint does not specify a section number or caption. See N.C.G.S. § 160A-79 (requiring in state court that a codified city ordinance be pleaded by both section number and caption). Additionally, the policy contains several passages that are in tension with one another. Compare (DE 13-1 at 5) ("The county is an 'at-will' employer and retains the right to terminate employment at any time and for any reason not prohibited by law.") and (id.) ("The employee personnel policies do not constitute a guarantee or contract of employment and the county reserves the right to change, revoke, interpret, or add to any of these policies at any time at its sole discretion without prior notice.") with (id. at 13-1) ("A regular employee may be . . . dismissed for unsatisfactory job performance, if after following the procedure outlined below, the employee's job performance is still deemed to be unsatisfactory.") and (id.) ("All cases of . . . dismissal must be approved by the appointing authority prior to giving final notice to the employee.") (emphasis added). Nevertheless, drawing inferences from the allegations in plaintiff's favor, as the court must at this juncture, plaintiff has stated a plausible claim for deprivation of a property interest in continued employment.

The court next turns to the assertion that defendants possess qualified immunity where neither of them violated a clearly established right. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, "[t]o overcome an official's claim of qualified immunity, the plaintiff must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Attkisson v. Holder, 925 F.3d 606, 623 (4th Cir. 2019).

Plaintiff has not alleged facts sufficient to overcome qualified immunity. As the court explains above, it is not clear from the allegations in the complaint whether Carteret County's Personnel Policy carries the force of law. Sections of the policy are in tension with each other such that multiple reasonable interpretations of the policy exist. Thus, a reasonable person would not have known plaintiff's property rights were being violated "at the time of the challenged conduct." Attkinson, 925 F.3d at 623. Accordingly, plaintiff's claims against defendants Burns and Foxworth for deprivation of property in violation of the Fourteenth Amendment are dismissed.

Plaintiff maintains that defendants are not entitled to qualified immunity where the policy "was ordained explicitly pursuant to the state law," referencing N.C.G.S. § 153A-82(a)(1), and where that law "mandated . . . adherence to the provisions of the personnel policy." (DE 23 at 23). The statute on which plaintiff relies specifies that a county manager "shall make . . . removals in accordance with any general personnel rules, regulations, policies, or ordinances that the board [of commissioners] may adopt." N.C.G.S. § 153A-82(a)(1). While this statute does support plaintiff's argument that the personnel policy carried the force of law, it does not shed any light on the proper interpretation of that policy. The statute certainly does not, by its own terms, convey a property

7

right in continued employment "of which a reasonable person would have known." Harlow, 457 U.S. at 818. This argument therefore lacks merit.

Plaintiff argues in addition that the personnel policy should not be considered by the court, or in the alternative, that the personnel policy protected plaintiff. (See DE 23-27). While ordinarily extrinsic evidence is not considered on a motion to dismiss, "when a defendant attaches a document to its motion to dismiss, a court may consider it . . . if it was integral to and explicitly relied on in the complaint and if the plaintiff[ does] not challenge its authenticity." American Chiropractic Association v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). The complaint references and relies upon the personnel policy repeatedly. See, e.g., (Compl. ¶ 23) ("All parties to this action were also subject to the county personnel policies . . . ordained on December 3, 2018 [and] in effect the entire time plaintiff was employed by defendant county); (compl. ¶ 75) ("Plaintiff timely grieved the termination pursuant to Article X of the Personnel Policy."). Plaintiff does not challenge the document's authenticity; therefore, the court may consider the personnel policy when making its decision. Plaintiff undertakes in addition an extensive analysis of the policy's meaning, contending that it "was not the intent of the Board to authorize the assistant county manager to . . . mash up procedures for a one-off termination for fallacious reasons." (DE 23 at 27). No part of the court's ruling, however, rests upon the proper interpretation of the personnel policy. Instead, the court determines that the policy does not clearly establish a property right to continued employment where a reasonable person would not have known what rights the policy created. Thus, defendants Burns and Foxworth are entitled to qualified immunity on plaintiff's § 1983 claim.

b. Denial of Liberty Interest under § 1983

The court agrees with defendant that plaintiff has failed plausibly to allege that she was deprived of liberty in violation of § 1983. With respect to deprivation of a liberty interest in the context of employment, a plaintiff must allege that an employer made false "charges against [her that] placed a stigma on [her] reputation . . . [and] were made public by the employer . . . in conjunction with [her] termination or demotion." Sciolino v. City of Newport News, Va., 480 F.3d 642, 646 (4th Cir. 2007). "The type of communication that gives rise to a protected liberty interest implies the existence of serious character defects such as dishonesty or immorality" rather than simple incompetence. Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 308 (4th Cir. 2006). "Allegations of incompetence alone [do] not give rise to a protected liberty interest." Sciolino, 480 F.3d at 646 n.2.

Plaintiff alleges at most that defendant communicated statements of incompetence. The notification of dismissal that plaintiff received, which she alleges is public information, (see compl. ¶ 71), states that the reason for her dismissal was "unsatisfactory job performance . . . demonstrated inefficiency, negligence, or incompetence in the performance of duties; and failure to meet work standards over time." (Id. ¶ 69). Defendant Burns is alleged to have told a newspaper reporter that plaintiff was terminated "due to unsatisfactory job performance over a period of time," (id. ¶ 78), and, upon the reporter's request for clarification, defendant Foxworth is alleged to have defined unsatisfactory job performance as "any aspect of the employee's job which is not performed as required to meet the standards set forth by the supervisor." (Id. ¶ 81). The complaint does not allege that any defendant accused plaintiff of dishonesty, immorality, or any other serious character defect. Accordingly, plaintiff's has failed to state a claim for denial of a liberty interest under § 1983.

Plaintiff argues that her employment opportunities will be limited where "the imputation of 'incompetence' is a legally significant affront" in the context of the North Carolina tort law. (DE 23 at 15). The United States Court of Appeals for the Fourth Circuit has repeatedly held, however, that accusations of incompetence do not implicate a Fourteenth Amendment liberty interest. See, e.g., Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982) ("Allegations of incompetence do not imply the existence of serious character defects . . . and are not the sort of accusations that require a hearing."); Ridpath, 447 F.3d at 308 ("In assessing liberty interest claims, we have distinguished statements that imply such serious character defects from statements that simply allege 'incompetence.'"). Thus, plaintiff may not import a standard from state tort law into the § 1983 context.

3.  State Law Claims

The court addresses plaintiff's claims for libel and violation of the North Carolina Constitution. If a remedy exists in this case, it exists under state law. See, e.g., Bolkhir v. North Carolina State University, 321 N.C. 706, 709 (1988). "A district court may decline to exercise supplemental jurisdiction over a pendent state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "If the federal claims are dismissed before trial. . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). See also Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary"). Accordingly, where all federal claims are dismissed, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 12) is GRANTED and this action is DISMISSED for failure to state a claim upon which relief may be granted. Plaintiff's motion for leave to file supplemental memorandum (DE 29) is TERMINATED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this 25th day of August, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge